RICHARD F. DEJEAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dejean v. Commissioner
Docket No. 20098-87
United States Tax Court
T.C. Memo 1995-273; 1995 Tax Ct. Memo LEXIS 285; 69 T.C.M. (CCH) 2948; June 20, 1995, Filed *285 Decision will be entered under Rule 155. Richard F. Dejean, pro se. For respondent: Lisa M. Oshiro and John Aletta (specially recognized). SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax for the years and in the amounts as follows: Additions to Tax Year
Deficiency
Sec. 6653(a)(1)
Sec. 6661
1982
$ 29,351
$ 1,468
$ 7,338
1983
9,778
489
2,445
1984
1,294
65
0  Respondent also determined for 1982 and 1983 that if the additions to
tax under sec. 6653(a) apply, the additions to tax
under sec. 6653(a)(2) will
also apply in an amount to be determined.
Respondent determined that interest accruing after Dec. 31, 1984, will
be assessed at 120 percent of the rate established by sec. 6621(a) on the
portion of the deficiency attributable to tax-motivated transactions.
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Some of the issues raised by the pleadings have been disposed of by agreement *286 of the parties, [1] leaving for our decision: (1) Whether the statute of limitations precludes respondent from determining a deficiency against petitioner for the year 1982; (2) whether deductions taken by petitioner in 1982 were for ordinary and necessary business expenses; (3) whether petitioner is entitled to deduct losses of Yellowstone East, Inc., on his individual Federal income tax return for the taxable year 1984; (4) whether petitioner is entitled to deduct expenses connected with properties claimed to be rental properties for the taxable years 1983 and 1984; (5) whether petitioner is liable for additions to tax for negligence pursuant to section 6653; and (6) whether petitioner is liable for additions to tax for substantial understatement for the taxable years 1982 and 1983 pursuant to section 6661. *287 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner resided in Sumner, Washington, at the time of the filing of his petition in this case. Petitioner filed Federal income tax returns for the calendar years 1982, 1983, and 1984 with the Internal Revenue Service Center in Ogden, Utah, on October 18, 1983, April 15, 1984, and August 14, 1985, respectively. Petitioner filed two amended returns for 1982, three amended returns for 1983, and one amended return for 1984. On December 30, 1982, Yellowstone East, Inc. (Yellowstone East), was incorporated under the laws of the State of Wyoming. Yellowstone East was formed by petitioner and Charles and Betty Wendtland (Mr. and Mrs. Wendtland), for the purpose of teaching fly fishing and conducting guided fly fishing tours. Petitioner owned 50 percent of the company, and Mr. and Mrs. Wendtland each owned 25 percent. In July 1982, petitioner opened a bank account on behalf of Yellowstone East with American State Bank of Jackson. Yellowstone East did not file any Federal income tax return or a partnership return of income for 1982. In March 1983, Yellowstone East submitted a Form 2553, Election *288 by Small Business Corporation, to the Internal Revenue Service (IRS). The Form 2553 did not include a statement showing the tax yearend of each shareholder. Under date of May 19, 1983, the IRS returned the Form 2553 to Yellowstone East with a letter stating that the corporation was allowed 15 days from the date of the letter to provide information as to the tax yearend of each shareholder in order to make a timely filed election for the year 1983. Yellowstone East did not provide the information requested by the May 19, 1983, letter within the 15-day period. Mr. Wendtland wrote an undated letter to the IRS informing the IRS that his tax return was filed on the basis of a yearend of December 31, but provided no information as to the yearend of petitioner or of Mrs. Wendtland. On his Form 1040 for the taxable year 1982, petitioner claimed Schedule C expenses from Yellowstone East as follows: Item
Amount of deduction [1]
Depreciation
$ 912
Dues and publications
271
Interest
3,534
Supplies
468
Taxes
492
Travel and entertainment
783
*289 A Form 1120S, U.S. Income Tax Return for an S Corporation, was prepared for Yellowstone East and submitted to the IRS. The IRS did not accept this return for filing as a Form 1120S income tax return. On the Form 1120S submitted for Yellowstone East the date of incorporation is shown as January 3, 1983. On the Form 1120S for 1983 submitted by Yellowstone East, $ 2,718.73 in gross receipts and the following deductions were reported: Item
Amount of deduction
Salaries and wages
$ 300.00
Taxes
28.13
Depreciation
1,453.00
Advertising
594.00
Travel
555.41
Office and utilities
301.61
Insurance
789.82
Automobile
950.84
Petitioner on Schedule E of his Form 1040 for the taxable year 1983 claimed a loss of $ 1,127.04 from Yellowstone East. Yellowstone East filed for and obtained a concessions use license for operating guided trips in Yellowstone National Park for the years 1983 and 1984. In order to attract customers, Yellowstone East prepared brochures describing various fishing expeditions and fishing clinics. Yellowstone East also established a customer list of potential clients. Yellowstone East bought a general liability insurance policy for 1983 from Northeast *290 Insurance Co. The liability limit for damages under all coverages was $ 300,000. Petitioner purchased land in 1981 for $ 18,000 which he planned to use in conjunction with the activities of Yellowstone East (the DuBois property). Petitioner obtained a mortgage from American State Bank of Jackson in the amount of $ 15,400. He planned to use the funds to build a structure on the DuBois property and did use the funds for this purpose. Petitioner planned to lease the DuBois property to Yellowstone East rent free in return for Mr. Wendtland's managing the business without receipt of a salary. Petitioner reported no income from the DuBois property for any year here in issue, but took depreciation deductions on the property on Schedule E of his Federal income tax returns for the years 1983 and 1984 as follows: Year
Depreciation deduction
1983
$ 2,461.43
1984
2,672.52
Petitioner also deducted expenses of $ 704.44 and $ 2,928.94 for advertising and interest for the DuBois property on Schedule E of his 1984 tax return. Petitioner, doing business as Yellowstone East, obtained fire and casualty insurance for the building on the DuBois property from DuBois General Insurance *291 Agency covering the period from June 1983 to June 1984. Yellowstone East ceased doing business on December 31, 1983. Yellowstone East did not have any employees during 1984, nor did it file any Federal income tax return for that year. On February 18, 1986, petitioner executed a Consent to Extend the Time to Assess Tax, Form 872, with respect to his 1982 taxable year until April 15, 1987. The Form 872 was executed on behalf of the IRS on February 26, 1986. The form stated that the tax might be assessed at any time on or before April 15, 1987. It further stated: "However, if a notice of deficiency in tax for any such period(s) is sent to the taxpayer(s) on or before that date, then the time for assessing the tax will be further extended by the number of days the assessment was previously prohibited, plus 60 days." The notice of deficiency for each of the years 1982, 1983, and 1984 was mailed to petitioner on March 27, 1987. Respondent in her notice of deficiency to petitioner for the year 1982 disallowed all the deductions claimed on Schedule C in connection with Yellowstone East. For 1983 respondent did not disallow the deduction of $ 1,127.04 claimed by petitioner on Schedule *292 E of his 1983 return from Yellowstone East. Respondent has made no claim of error in failing to disallow this claimed deduction. Respondent disallowed the deductions claimed by petitioner on Schedule E as depreciation on the DuBois property in 1983 and 1984, and as advertising in 1984, but allowed the deductions for interest claimed with respect to loans on the DuBois property as Schedule A deductions for 1983 and 1984. Respondent also allowed deductions for sales tax as Schedule A deductions in 1983 and 1984. OPINION Petitioner contends that at the time the notice of deficiency was mailed to him, the period of limitations on mailing such a notice for the year 1982 had expired. Respondent contends that the notice of deficiency was issued within the statutory period for assessment of tax as extended by the Form 872. Section 6501(a) provides in general that the amount of any tax shall be assessed within 3 years after the date of the filing of the tax return. The limitations period on assessment is suspended when the IRS mails a notice of deficiency to the taxpayer. Sec. 6503(a). Section 6501(c)(4) provides that where, before the expiration of the time prescribed for assessment *293 of any income tax, the Secretary or his delegate and the taxpayer have consented in writing to the extension of the period for such assessment, the tax may be assessed at any time prior to the expiration of the period agreed upon. The notice of deficiency was mailed to petitioner on March 27, 1987. Petitioner filed his 1982 income tax return on October 18, 1983. On February 18, 1986, petitioner executed a Consent to Extend the Time to Assess Tax, Form 872, pursuant to section 6501(c)(4). The Form 872 was executed by the IRS on February 26, 1986, and extended the period of limitations with respect to the 1982 return until April 15, 1987. Petitioner contends that the Form 872 extended the period for assessment until April 15, 1987, and the IRS had not made an assessment by that time. However, the running of the period of limitations is suspended with respect to the deficiency after the mailing of a notice of deficiency, and if a proceeding with respect to the deficiency is brought before this Court, the period of limitations is suspended until the decision of this Court becomes final and for 60 days thereafter. Sec. 6503(a); sec. 301.6503(a)-1, Proced. & Admin. Regs. Therefore, *294 the notice of deficiency was mailed within the period of limitations on assessment for the taxable year 1982, as required by section 6501. It is unclear whether petitioner is contending that the period of limitations had expired for either the year 1983 or 1984 when the notice of deficiency was mailed. However, from the facts we have found it is clear that the notice of deficiency was mailed within 3 years from the date of the filing of petitioner's tax return for each of these years. For 1982 petitioner on his return claimed on Schedule C deductions in connection with Yellowstone East, which was incorporated on December 30, 1982. Clearly the amounts were spent before Yellowstone East was incorporated. Therefore, the issue is which, if any, of the items expended were ordinary and necessary expenses of a business of petitioner's and which were capital expenditures. Section 162(a) provides a deduction for ordinary and necessary business expenses incurred by a taxpayer in carrying on a trade or business. The Supreme Court has stated that the question of whether a taxpayer is engaged in a trade or business requires an examination of all the relevant facts. Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987); *295 see Higgins v. Commissioner, 312 U.S. 212, 217 (1941). In applying the facts and circumstances test, courts have focused on three factors indicative of whether a trade or business exists. First, the taxpayer must undertake an activity intending to make a profit. Drobny v. Commissioner, 86 T.C. 1326, 1340 (1986); Green v. Commissioner, 83 T.C. 667, 687 (1984). Second, the taxpayer must be regularly and actively involved in the activity. Snyder v. United States, 674 F.2d 1359, 1364 (10th Cir. 1982). Third, the taxpayer's business operations must actually have commenced. It is generally accepted that startup expenditures are capital in nature and, therefore, are not deductible under section 162(a). Goodwin v. Commissioner, 75 T.C. 424, 433 (1980), affd. without published opinion 691 F.2d 490 (3d Cir. 1982); see also sec. 195. Respondent contends that Yellowstone East was not incorporated until 1983 and, therefore, petitioner is not entitled to any deductions for expenses of Yellowstone East in 1982. *296 Respondent further argues that the startup expenditures were those of Yellowstone East and not of petitioner, as petitioner was not an employee of the corporation, nor was he required by the corporation to incur these expenditures on the corporation's behalf. Petitioner contends that Yellowstone East was incorporated in 1982 and that the deductions taken in 1982 were not startup expenditures but rather ordinary and necessary business expenses deductible under section 162. Based on the record, we conclude that the expenses that relate to the taxable year 1982, other than as discussed below, were in the nature of startup expenditures and not ordinary and necessary business expenses of petitioner as defined under section 162. While we agree with petitioner that Yellowstone East was incorporated on December 30, 1982, we nevertheless conclude that expenses for the year 1982 were incurred prior to incorporation. Yellowstone East filed no tax return for 1982 and reported no expenses for salaries, advertising, office supplies, utilities, or insurance for 1982. Petitioner testified that the expenses incurred in 1982 related to either purchasing the land necessary to run the business, *297 obtaining the loan necessary to build a structure on the land, purchasing the initial supplies, or filing the articles of incorporation, all of which insofar as they are expenses with respect to Yellowstone East are startup expenditures. The record shows that the land was purchased by petitioner personally, and that petitioner personally obtained the loan to build the building which was used without payment of any cash rental to petitioner by Yellowstone East. Petitioner on brief has conceded that the tour guiding business was not actually begun by Yellowstone East until 1983. It is also clear from the record that, except for expenses relating to the land and building, the costs incurred in 1982 were on behalf of the business incorporated on December 30, 1982, as Yellowstone East. We, therefore, find that the expenses (except for interest of $ 3,534, taxes of $ 492, and depreciation of $ 912, which we consider below) were not ordinary and necessary expenses of petitioner personally within the meaning of section 162, but were startup expenditures of the corporation and, thus, were required to be capitalized by Yellowstone East. At the trial counsel for respondent stated that the *298 interest and taxes claimed by petitioner on Schedule C for 1982 had been allowed as Schedule A expenses of petitioner in the notice of deficiency. A review of the notice of deficiency shows this statement to be erroneous. We, therefore, hold that petitioner is entitled to additional Schedule A deductions in 1982 of $ 3,534 for interest and $ 492 for taxes. In fact in the years 1983 and 1984 these same deductions were allowed as Schedule A deductions to petitioner. We will consider the claimed deduction of $ 912 for depreciation by petitioner in 1982 in conjunction with our discussions of claimed similar deductions in 1983 and 1984. Whether or not petitioner or the corporation could in any way be entitled to amortization of startup expenses or an abandonment loss is not before us since no such claims with respect to these items have been made by petitioner or the corporation. Next at issue is whether petitioner is entitled to deduct depreciation of $ 912 in 1982 and rental expenses including depreciation in 1983 and 1984 on property owned by petitioner that was used by Yellowstone East. Respondent contends that since petitioner allowed Yellowstone East to use the property rent *299 free and received no rental income, petitioner is not entitled to deduct the rental expense of the property. Petitioner argues that consideration was paid by Yellowstone East in that Mr. Wendtland agreed not to draw a salary for his services to the company in return for petitioner's letting Yellowstone East use petitioner's property rent free. Section 212 provides a deduction for all ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. The requirement that the property be "held for the production of income" involves an inquiry into whether the taxpayer has a genuine expectation of profit, and the burden rests on the taxpayer to show that the rental property was being held for the production of income. Prince Trust v. Commissioner, 35 T.C. 974, 978 (1961). Based on the evidence before us, petitioner has made no showing that any rents were ever received from the property involved so as to entitle petitioner to any deduction for rental expenses. While petitioner argues that he received an *300 imputed rent from Yellowstone East due to the understanding that Mr. Wendtland would not charge for his services, there is no evidence that Yellowstone East ever leased the property from petitioner or ever paid petitioner an imputed rent. Despite petitioner's claims that he earned imputed income from this property, no such imputed income was reported by him. From the record there is nothing to show whether this claimed imputed income would be more or less than the deductions taken by petitioner for rental expenses. Petitioner has not shown that he is entitled to the claimed deductions. Petitioner argues that Yellowstone East properly elected subchapter S status for the years at issue and, therefore, petitioner is entitled to deduct the losses generated by that company. Respondent contends that Yellowstone East failed to properly file for subchapter S status, and further contends that Yellowstone East was not doing business during the year 1984. Since respondent did not disallow petitioner's claimed deduction for the Yellowstone East loss in 1983 and has not affirmatively alleged error in this respect, there is no issue before us for the year 1983 with respect to petitioner's *301 deduction of the claimed Yellowstone East loss. Petitioner has made no showing whatsoever as to the source of the claimed deductions from Yellowstone East in 1984. Petitioner has now conceded that Yellowstone East was not in business in 1984. [2]
Section 6653(a) imposes an addition to tax for negligence or intentional disregard of rules or regulations. The amount of the addition under section 6653(a)(1) is 5 percent of the underpayment. This addition applies if any part of the underpayment is attributable to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the portion of the underpayment attributable to negligence. Negligence under section 6653 is defined as the lack of due care or the failure to do what a reasonable and prudent person would do in a similar *302 situation. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Petitioner bears the burden of proving that he was not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Based on the record, petitioner has not met his burden of proving that he was not negligent. Furthermore, it appears that petitioner has conceded negligence in connection with the stipulated issue. Section 6661 imposes an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. An understatement is defined as the tax required to be shown on the return, less the tax actually shown on the return, reduced by any rebates. Sec. 6661(b)(2)(A). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Section 6661(b)(2)(B) provides that in determining the amount of the understatement, the total understatement is reduced by the items for which the taxpayer had substantial authority for the position taken on the return *303 or adequately disclosed the relevant facts on the return. The burden is on petitioner to show error in respondent's determination of the addition to tax under section 6661. Rule 142(a). Petitioner has made no such showing in this case. However, it does appear that, except for the adjustment involved in the stipulated issue, the total understatement of tax might be less than $ 5,000 in each year, and that the application of section 6661 will depend on the amount of the adjustments including the stipulated issue. This can be determined under Rule 155. Decision will be entered under Rule 155. Footnotes
1. An attorney who formerly represented petitioner signed an agreement with respondent to be bound by a test case with respect to petitioner's investment in Saxon Energy Brain. At the trial petitioner argued that he should not be bound by the action of his prior attorney, but the Court ruled that he was bound.↩
1. It appears from petitioner's tax return that the $ 912 depreciation deduction is on property owned by petitioner personally (the DuBois property), but used by Yellowstone East without payment of rent.↩
2. Respondent has only denied petitioner's deductions in this case and has not increased petitioner's income with respect to Yellowstone East.↩